UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

BARBARA MCCAFFERTY, as Personal Representative of the Estate of Katherine Shearl,

Plaintiff,

v. Case No: 2:25-cv-519-SPC-KRH

KENZIE KARE GROUP HOME I & II, LLC, a Florida limited liability company; CASSANDRA ELIZABETH MCKENZIE, an individual; GUARDIAN ASSURANCE SERVICES, INC., a Florida corporation; TERI ST. HILAIRE, an individual; KERRI STEVENS, an individual; PREMIER SUPPORT SERVICES, LLC, a Florida limited liability company; SHAWANA CAMMOCK, an individual; LUNESE PIERRE JOSEPH, an individual; LISEMONDE CADET MIDY, an individual; GLADYS PIERRE-JOSEPH, an individual; RONNIE MCKENZIE, an individual; DOLORES CUERVO, an individual; BENITE SANON, an individual; MILDRED WOODSON, an individual; SEIDE GUERLINE, an individual; PETER SMART, an individual; KIMONE DAWINS, an individual;

RUPERT MCKENZIE, an individual; EESHAWNNA MATTHEWS, an individual; CASSANDRA THOMPSON, an individual; and RUTH PHILDOR, an individual,

Defendants.

---

## OPINION AND ORDER

Before the Court is a Motion to Dismiss (Doc. 103) filed by Defendants Kerri Stevens ("Stevens") and Premier Support Service, LLC ("Premier") and a Motion to Dismiss filed by Defendants Kenzie Kare Group Home I & II, LLC ("Kenzie Kare") and individuals Cassandra Mckenzie ("McKenzie"), Cammock, Joseph, Midy, Pierre-Joseph, Ronnie Mckenzie, Cuervo, Sanon, Woodson, Guerline, Smart, Dawins, Rupert Mckenzie, Petit-Fort, and Phildor (Doc. 104) (collectively, "Kenzie Defendants"). Plaintiff Barbara McCafferty filed a response to each motion. (Docs. 118, 119.) The original Complaint was dismissed as a shotgun pleading without prejudice to filing an amended complaint not to exceed 80 pages. (Doc. 96.) The 75-page (Amended) Complaint (Doc. 97) is the operative pleading.

### Legal Standard

A district court should dismiss a claim where a party fails to plead facts that make the claim facially plausible. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a court can draw a

reasonable inference, based on facts pled, that the opposing party is liable for the alleged misconduct. *See Ashcroft v. Iqbal*, 556 U.S. 662, 668 (2009). When considering a Rule 12(b)(6) motion, the reviewing court must accept all factual allegations in the complaint as true and view them in a light most favorable to the plaintiff. *See id.* at 678.

**Background**

Plaintiff Barbara McCafferty is the mother and personal representative of the Estate of Katherine Shearl ("Shearl"). In 2013, Shearl was adjudicated incompetent and appointed a plenary guardian, making her a ward of the state. Shearl suffered from autism, cerebral palsy/developmental delay, bipolar disorder, seizure disorder, and behavioral problems. Teri St. Hilaire ("St. Hilaire") was named Shearl's new plenary guardian over Shearl's person and property.

Prior to April 2022, the State of Florida's Agency for Persons with Disabilities ("APD") issued a group home facility license to Kenzie Kare. In 2022, St. Hilaire moved Shearl to Kenzie Kare, where Kerri Stevens became her support coordinator. While residing at Kenzie Kare, APD paid for Shearl's room and board, and Medicaid covered her medical care. At the time of her entry into the facility, apart from her underlying history, she was in good health, participating in activities including shopping, sightseeing, playing in the park, eating out, and visiting local attractions. Eight months into her stay,

Shearl was having difficulty swallowing, was nonverbal, had lost weight, and had become cross-eyed.

In early March 2023, Shearl had a seizure and fell. She was treated at Lehigh Hospital's emergency room, where she received sutures to her chin. A CT scan revealed Shearl had fractured her right jawbone. After treatment, she returned to Kenzie Kare.

At the end of April 2023, Kenzie Kare noted that Shearl is a vulnerable adult due to autism, physical limitations, mental limitations, and mental illness. They noted that Shearl had a black eye that appeared to be a week or two old, but that no one knew anything about it. It was also noted that Shearl frequently fell due to balance issues, and that it was unknown why she was not being watched more carefully.

In early June 2023, Shearl fell a second time, striking her head on the concrete floor and fracturing her nose and right jawbone. Shearl was transported to the hospital, where it was noted that, in addition to the fractures, she had pneumonia and COVID-19 and a history of a left mandible fracture. She was discharged back to Kenzie Kare on June 6, 2023.

But that was not the last fall. In mid-June 2023, Shearl was left unattended and unrestrained in a wheelchair in her room. She had a seizure, fell for a third time, struck her head on the concrete floor, becoming unresponsive. Shearl was taken to the hospital, placed on a ventilator, and

diagnosed with a right frontal epidural hematoma and acute respiratory failure. The injuries required emergency brain surgery. Over the next few days, Shearl continued to decline, and it was determined that all medical interventions would be futile, as there was no chance of recovery. Shearl remained on a ventilator until June 27, 2023, when it was removed. She died. The death certificate listed the cause of death as complications of traumatic intracranial hemorrhage, blunt trauma, and fall.

Now to consider the counts in the Amended Complaint. In Count I, Plaintiff alleges that Mckenzie is a registered nurse, an employee, or agent of Kenzie Kare, and the primary on-site manager and owner of Kenzie Kare. Plaintiff further alleges that Kenzie Kare performed a State public function by accepting and retaining custody of developmentally disabled persons. Prior to entering Kenzie Kare, Shearl was known to Mckenzie to have a history of and permanent diagnoses of autism, cerebral palsy/developmental delay, bipolar disorder, and seizure disorder. Despite Mckenzie's knowledge of Shearl's objectively serious medical conditions and injuries, she did not respond reasonably to the risk of serious harm to Shearl from falls, abuse, and neglect. Plaintiff also alleges that Mckenzie acted with subjective recklessness by failing to timely notify St. Hilaire and/or Stevens of the need for changes to Shearl's plan of care, fall risk assessment, and safety plan. Plaintiff further alleges that Mckenzie did not arrange for Shearl to be seen by a medical doctor

and failed to facilitate the implementation of and/or adhere to Shearl's plan of care, fall risk assessment, and safety plan. Mckenzie was aware that Shearl required 24/7 monitoring and safeguards against falls, that this was not being done, and that falls, and at least one instance of physical violence occurred. She did so little that it amounted to deliberate indifference. Plaintiff alleges that Mckenzie provided services that were so cursory as to amount to no services at all with respect to fall prevention and abuse prevention. (Doc. 97 ¶¶ 54–77).

In Count II, Plaintiff alleges that Kenzie Kare is a business entity created by Mckenzie capable of separate liability for its policies of deliberate indifference to serious medical conditions. Kenzie Kare entered into contracts with APD and the State of Florida and is licensed by the State of Florida to provide services to developmentally disabled persons who are wards of the State of Florida. Under the Florida Administrative Code, Kenzie Kare was required to employ qualified and experienced professionals and staff to ensure Plaintiff's health and safety. Kenzie Kare was also required to implement client support plans and contact the support coordinator to ensure the provision of medical care. Plaintiff alleges that Kenzie Kare acted with subjective recklessness and maintained a longstanding practice of accepting people who required medical care and/or services beyond what it could provide due to Kenzie Kare's practice of maintaining staff without medical training or

sufficient experience. Plaintiff alleges that Kenzie Kare maintained policies and practices under which residents with serious medical needs were routinely denied an adequate plan of care, fall risk assessment and/or safety plan, causing Shearl's injuries. Kenzie Kare's policies were so settled and permanent as to have the force of law, and residents have suffered or died as a result of the policies. Kenzie Kare had a financial incentive not to provide the proper services, and as a direct result, Shearl was deprived of her liberty interest in her safety and security and her substantive due process rights. (*Id.* at ¶¶ 80–94.)

In Count III, Plaintiff alleges that Stevens was an employee or agent of Premier serving as a waiver support coordinator assigned to Shearl. Under Florida statutes and regulations, Stevens had responsibilities toward Shearl, including maintaining progress notes, mitigating risks, and matching service requests to Shearl's needs. Plaintiff alleges that providing services was a governmental act discharging Florida's function of providing support coordination services. Shearl was involuntarily committed in a governmental custodial setting as a ward of the State. Despite knowing of Shearl's objectively serious medical conditions, Stevens did not respond reasonably to the risk of serious harm. Plaintiff alleges that Stevens was reckless in failing to assist Shearl by placing her at Kenzie Kare without adequate support, and that she

acted with subjective recklessness by failing to respond to an acute change in Shearl's physical status. (*Id.* ¶¶ 99–103, 108–14.)

In Count IV, Plaintiff incorporates the allegations made in Count III, and alleges that Premier, under a contract with APD, undertook to perform the governmental act of providing waiver support services to persons with developmental disabilities and that it was required to train and supervise its employees. Plaintiff further alleges that Premier's employees or agents closely cooperated and/or coordinated their efforts to provide ongoing case management for Shearl. Premier received thousands of dollars from APD and/or the State of Florida using taxpayer money to provide waiver support services to persons in state custody, such as Shearl.

Plaintiff alleges that Premier had an official custom, pattern, and/or practice of avoiding compliance with the mentoring program, failing to ensure its support coordinators had the knowledge, skills, and abilities to provide services, and failing to maintain and enforce standards and procedures to ensure its support coordinators complied with their duties and responsibilities. This was intended to keep expenses low and return as much profit as possible.

Plaintiff alleges that Premier was deliberately indifferent to Shearl's serious medical needs and failed to provide important support services. Premier maintained policies and practices under which disabled persons with serious medical needs were routinely denied support services, causing Shearl's

injuries. Premier's policies were persistent and widespread, and others have suffered or died because of the deliberate indifference and financial incentive to delay or deny support coordination services. (*Id.* ¶¶ 119–32.)

**Analysis**

As to Counts I and II, Kenzie Kare and Mckenzie argue that Plaintiff has failed to allege they acted under color of state law for Section 1983 liability. In Counts III and IV, Premier and Stevens argue that the two federal claims under 42 U.S.C. § 1983 for deliberate indifference fail because neither Premier nor Stevens is a state actor under any applicable test. The Kenzie Defendants continue to contend the Amended Complaint is a shotgun pleading "replete with conclusory and vague allegations." The remaining individual defendants are not named in the Section 1983 claims.

The Plaintiff counters that the threshold for a motion to dismiss is low and that two of the three tests, the public function test and the nexus/joint function test, are satisfied.

Section 1983 provides a private cause of action against any person who, under color of state law, deprives a person of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. "To state a claim for relief in an action brought under § 1983, respondents must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was

committed under color of state law." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999) (citation omitted).

"Like the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1276–77 (11th Cir. 2003) (citation omitted). "A private party is only considered a state actor in the 'rare circumstances' that the private party meets one of three recognized tests: the State compulsion test, the public function test, or the nexus/joint action test." *Higdon v. Smith*, 565 F. App'x 791, 792 (11th Cir. 2014) (citation omitted).

To deem a private party a state actor, one of these conditions is required: "(1) the State has coerced or at least significantly encouraged the action alleged to violate the Constitution ("State compulsion test"); (2) the private parties performed a public function that was traditionally the exclusive prerogative of the State ("public function test"); or (3) "the State had so far insinuated itself into a position of interdependence with the [private parties] that it was a joint participant in the enterprise[]" ("nexus/joint action test")." *Rayburn ex rel. Rayburn v. Hogue*, 241 F.3d 1341, 1347 (11th Cir. 2001) (citing *NBC, Inc. v. Commc'ns Workers of Am.*, 860 F.2d 1022, 1026–27 (11th Cir. 1988). "We must determine on a case-by-case basis whether sufficient state action is present

from a non-state actor (defendant) to sustain a section 1983 claim." *Willis v. Univ. Health Servs., Inc.*, 993 F.2d 837, 840 (11th Cir. 1993) (citation omitted).

**State Compulsion Test**

Under the state compulsion test, "a State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982) (citations omitted). *See also Nat'l Broad. Co.*, 860 F.2d at 1026 (noting that the state compulsion test mirrors the language in *Blum*). "The mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment." *Blum*, 457 U.S. at 1004 (citation omitted).

There are no allegations that the State of Florida coerced or encouraged any of the defendants to violate Shearl's rights, and Plaintiff does not assert that McKenzie, Kenzie Kare, Premier, and/or Stevens satisfy this test. Accordingly, the state compulsion test need not be discussed further.

**Public Function Test**

"The public function test for state action has been limited strictly, and covers only private actors performing functions 'traditionally the *exclusive* prerogative of the State.'" *Nat'l Broad. Co.,* 860 F.2d at 1026 (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 353 (1974)). "The mere fact that a business

is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment." *Jackson*, 419 U.S. at 350. Being given "*co-extensive*" powers is irrelevant because the private actor must be "given powers (or perform functions) that are 'traditionally the *exclusive* prerogative of the State,'" and "[f]ew activities are 'exclusively reserved to the states.'" *Harvey v. Harvey*, 949 F.2d 1127, 1131 (11th Cir. 1992) (citations omitted).

**Nexus/Joint Action Test**

Under the third test, the Court asks whether "'the State had so far insinuated itself into a position of interdependence with the private party that it was a joint participant in the enterprise.'" *Nat'l Broad. Co.*, 860 F.2d at 1026–27 (quoting *Jackson*, 419 U.S. at 357–58). "[T]he mere fact that a State regulates a private party is not sufficient to make that party a State actor." *Rayburn*, 241 F.3d at 1348 (citations omitted). The government and the private party must be "intertwined in a 'symbiotic relationship.'" *Nat'l Broad. Co.*, 860 F.2d at 1027 (citing *Jackson*, 419 U.S. at 357).

Plaintiff argues that Defendants qualify as state actors under the "public function test" and the "nexus/joint function" test. (Doc. 118 at 1–10; Doc. 119 at 6–13). Plaintiff further argues that the "iBudget system is a mandatory government program under the Medicaid umbrella[.] In other words, the government care being administered was a government-guaranteed and

mandated service" and thus a public function. (Doc. 118 at 3; Doc. 119 at 6–7). Plaintiff contends that "[i]f Florida did not administer the programs through its agencies and private actors, the state would be legally obligated to provide the care itself." (Doc. 118 at 3; Doc. 119 at 7.)

Kenzie Kare Defendants argue that "[a] private group home and its personnel do not become state actors merely by being licensed, regulated, or receiving Medicaid/APD funds." They also argue that no facts establish that the State took custody of Plaintiff or that Kenzie Kare imposed the type of governmental restraint that would trigger a constitutional duty. (Doc. 104 at 8, 10.) Stevens and Premier argue that Plaintiff has failed to allege that the responsibilities and duties performed by Defendants were within the State's traditional and exclusive prerogative, and that none of the allegations are sufficient to transform private conduct into state action. (Doc. 103 at 7, 11–12).

The APD is "responsible for providing all services provided to persons with developmental disabilities under chapter 393, including the operation of all state institutional programs and the programmatic management of Medicaid waivers established to provide services to persons with developmental disabilities." Fla. Stat. § 20.197(3). The APD "provides an array of treatment, training, and support services to adults and children with developmental disabilities." *Agency for Persons With Disabilities v. Dallas*, 38

So. 3d 831, 832 (Fla. Dist. Ct. App. 2010). The agency may take disciplinary action, including revoking or suspending a license, if the Department of Children and Families verifies abuse or neglect of a vulnerable adult. Fla. Stat. § 393.0673(1)(b); *see also* Fla. Admin. Code r. 28-106.2015(1) (the agency must serve an administrative complaint before suspending a license or imposing administrative fines).

Chapter 393 of the Florida Statutes sets out the "community-based services the Agency may provide." *Id.* Stevens is described as a "support coordinator," defined as an employee of a "qualified organization"[1] designated to "assist individuals and families in identifying their capacities, needs, and resources, as well as finding and gaining access to necessary supports and services; coordinating the delivery of supports and services; advocating on behalf of the individual and family; maintaining relevant records; and monitoring and evaluating the delivery of supports and services to determine the extent to which they meet the needs and expectations identified by the individual, family, and others who participated in the development of the support plan." Fla. Stat. § 393.063(43). The statute provides legislative findings and declarations:

[1] "[T]he term "qualified organization" means an organization determined by the agency to meet the requirements of this section and of the Developmental Disabilities Individual Budgeting Waiver Services Coverage and Limitations Handbook." Fla. Stat. § 393.0663(2)(a).

> The Legislature, therefore, declares that all persons with developmental disabilities who live in licensed community homes shall have a family living environment comparable to other Floridians and that such residences shall be considered and treated as a functional equivalent of a family unit and not as an institution, business, or boarding home. The Legislature further declares that, in developing community-based programs and services for individuals with developmental disabilities, private businesses, not-for-profit corporations, units of local government, and other organizations capable of providing needed services to clients in a cost-efficient manner shall be given preference in lieu of operation of programs directly by state agencies. Finally, it is the intent of the Legislature that all caretakers unrelated to individuals with developmental disabilities receiving care shall be of good moral character.

Fla. Stat. § 393.062.

To satisfy the public function test, Plaintiff must show that defendants exercised the authority of the State of Florida "traditionally exclusively reserved to the state, such as holding elections," or "eminent domain." *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992). Plaintiff cannot meet this high bar in this case, as the private entity providing support and the support coordinator are not positions exclusive to the state. As in an at-risk youth facility, foster homes, and foster parents are not considered state actors or agents of the state. *See, e.g.*, *Howell v. Father Maloney's Boys' Haven, Inc.*, 976 F.3d 750, 753 (6th Cir. 2020) (citing *Malachowski v. City of Keene*, 787 F.2d 704, 710–11 (1st Cir. 1986) (per curiam); *Leshko v. Servis*, 423 F.3d 337, 343–46 (3d Cir. 2005); *United States v. Peneaux*, 432 F.3d 882, 896 (8th Cir. 2005); *Rayburn ex rel. Rayburn v. Hogue*, 241 F.3d 1341, 1348 & n.10 (11th Cir. 2001);

*Milburn by Milburn v. Anne Arundel Cty. Dep't of Soc. Servs.*, 871 F.2d 474, 479 (4th Cir. 1989). This is distinct from the situation in *Perez v. Sugarman*, where "the statutory scheme expressly contemplates that in performing [the] public function of caring for children the State may utilize private entities[.]" 99 F.2d 761, 765 (2d Cir. 1974).

Private disability facilities have also been found not to engage in a traditional state function. *Sybalski v. Indep. Grp. Home Living Program, Inc.*, No. 06 CV 4899 (JG), 2007 WL 1202864, at *5 (E.D.N.Y. Apr. 24, 2007) (finding that care for the mentally disabled is neither traditionally nor exclusively reserved to the state), *aff'd*, 546 F.3d 255 (2d Cir. 2008); *Carter v. Takoda Trails*, No. 1:25-CV-00019, 2026 WL 1217712, at *5 (S.D. Ohio May 5, 2026) ("Just because the Ohio legislature uses expansive language in Section 2744.01(C)(2)(o), to include within the definition of a "governmental function" developmental disabilities facilities like Takoda Trails ICF, this does not necessarily convert that function into one exclusively reserved to the State.").

The APD's role is limited to regulating licensing and revoking licenses through administrative proceedings. "The mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment." *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 350 (1974); *see also Howell*, 976 F.3d at 755 ("Requiring private actors to follow statutory mandates, even if they're "extensive," doesn't transform

them into public servants."). "In essence, it must be demonstrated that the State is *intimately* involved in the challenged private conduct in order for that conduct to become attributable to the state for purposes of a § 1983 action." *Bier v. Fleming*, 717 F.2d 308, 311 (6th Cir. 1983) (emphasis added). The alleged incentive for financial gain or receipt of funds from Medicare does not make defendants state actors. *Fields v. Unnamed Emps. of Carlton Palms Educ. Ctr.*, No. 5:11-CV-657-OC-10PRL, 2012 WL 4009619, at *2 (M.D. Fla. Sept. 12, 2012) ("'[I]t is well settled that a private institution does not become a state actor because 'virtually all of its income was derived from government funding.'") (citation omitted).

**Remaining Counts**

Plaintiff's arguments as to Counts I through IV fail and must be dismissed. The Court declines to exercise supplemental jurisdiction over the remaining state law claims. 28 U.S.C. § 1367(c).[2] Therefore, the Court will

---

[2] The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if--

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

dismiss without prejudice Count V (survival claim as to the individual Kenzie Kare Defendants), Count VI (wrongful death claim as to the individual Kenzie Kare Defendants), Count VII (survival claim as to Mckenzie), Count VIII (wrongful death claim as to Mckenzie), Count IX (vicarious liability survival claim as to Kenzie Kare), Count X (vicarious liability wrongful death as to Kenzie Kare), Count XI (negligent training claim as to Kenzie Kare), Count XII (negligent supervision claim as to Kenzie Kare), Count XIII (survival claim as to Kenzie Kare), Count XIV (survival claim as to Teri St. Hilaire), Count XV (wrongful death claim as to Teri St. Hilaire), Count XVI (vicarious liability claim as to Guardian Assurance Services), Count XVII (survival claim as to Kerri Stevens), Count XVIII (wrongful death claim as to Stevens), Count XIX (vicarious liability claim as to Stevens), Count XX (negligent training as to Premier Support), and Count XXI (negligent supervision of Stevens as to Premier Support).

Accordingly, it is now

**ORDERED:**

1. The Motion to Dismiss filed by Premier Support Service, LLC and Kerri Steven (Doc. 103) is **GRANTED** as to Counts III and IV.

---

28 U.S.C. § 1367(c).

2. The Motion to Dismiss filed by Kenzie Kare Group Home I & II, LLC and individuals Cassandra Mckenzie, Cammock, Joseph, Midy, Pierre-Joseph, Ronnie Mckenzie, Cuervo, Sanon, Woodson, Guerline, Smart, Dawins, Rupert Mckenzie, Petit-Fort, and Phildor (Doc. 104) is **GRANTED** as to Counts I and II.
3. Counts I, II, III, and IV of the (Amended) Complaint (Doc. 97) are **DISMISSED with prejudice.**
4. Having dismissed all claims over which it has original jurisdiction, the Court declines to exercise supplemental jurisdiction over the remaining state law claims, Counts V through XXI, which are **DISMISSED without prejudice**.
5. The Clerk shall enter judgment, terminate all deadlines, and close the case.

**DONE AND ORDERED** at Fort Myers, Florida on July 27, 2026.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record